IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION



| | |
|---|---|
| ADMIRAL INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:08cv00055 |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| ACE AMERICAN INSURANCE | ) |
| CO. & ILLINOIS UNION | ) By: Samuel G. Wilson |
| INSURANCE CO., | ) United States District Judge |
| | ) |
| Defendants. | ) |

An employee of American Home Patient, Inc. ("AHP") shot and killed two of his fellow employees and himself at their workplace in Rockingham County, Virginia. In this diversity action, Plaintiff, Admiral Insurance Company ("Admiral") seeks indemnification or contribution from Defendants, Ace American Insurance Company ("Ace") and Illinois Union Insurance Company ("Illinois Union") (an Ace affiliate) for funds Admiral contributed to settle two wrongful death suits brought by the estates of the two slain employees against AHP, alleging negligent retention, negligent supervision, and failure to provide a safe workplace.[1] The court finds that Admiral's policy plainly excluded coverage, that Admiral owed AHP no duty to defend or indemnify, and that Admiral is entitled to indemnification from Illinois Union.

I.

AHP, a company that provides home medical services and equipment, contracted with Admiral, Ace, and Illinois Union to obtain insurance coverage. Admiral issued AHP a

---

[1]Admiral is a Delaware corporation with its principal place of business in New Jersey and Ace and Illinois Union are Pennsylvania corporations with their principal places of business in that state. Because there is complete diversity and more than $75,000 in controversy, there is diversity jurisdiction pursuant to 28 U.S.C. § 1332.

"Commercial General Liability Policy" in which it agrees to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'. . . ."[2] The policy contains several exclusions, two of which are relevant here.

**2.  Exclusions:**

This Insurance does not apply to: . . .

**d.  Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation or any similar law.

**e.  Employer's Liability**

"Bodily injury" to:

(1)  An "employee" of the insured arising out of and in the course of:

(a)  Employment by the insured; . . . .

In contrast to the Admiral policy, which excludes coverage for injuries covered under workers' compensation law and injuries to employees that arise out of and in the course of employment, the "Workers Compensation and Employers Liability Insurance Policy" Ace issued AHP provides coverage for those injuries. Under its "Workers Compensation" provisions, Ace agrees to pay "the benefits required of [AHP] by the workers compensation law," and under its "Employers Liability Insurance" coverage it agrees to pay for injuries to employees as follows:

A.  How This Insurance Applies

---

[2]The policy further explained that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"

2

> This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
>
> 1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
>
> 2. The employment must be necessary or incidental to your work in a state or territory listed in item 3.A. of the Information Page.
>
> 3. Bodily injury by accident must occur during the policy period.
>
> 4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
>
> 5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

The limit of Ace's liability under its Employer's Liability Insurance for "bodily injury by accident" was $1 million for "each accident."

Illinois Union insured AHP under a policy that was in excess to Admiral and Ace's policies. Its "Excess Liability" coverage was "subject to the same terms and conditions as the 'underlying insurance.'" Illinois Union's policy had a "General Aggregate Limit" of $10 million.

On May 16, 2006, AHP's employee, Brewer Hoover, shot and killed two co-employees and himself during business hours at AHP's workplace in Rockingham County, Virginia. On July 6, 2006, the estates of the two deceased co-employees, Bonnie Crump and Gary Gibson, each brought nearly identical wrongful death actions in the Circuit Court for Rockingham County against both AHP and Hoover's estate. Against AHP, each complaint asserted claims of negligent retention, negligent supervision, and failure to provide a safe workplace. Each

3

complaint alleged that prior to the shootings Hoover had threatened Crump, Crump had left her manager three telephone messages notifying him about this conduct, and other employees had also reported Hoover's behavior to the manager. Each complaint also alleged that Hoover's "conduct towards [Crump and Gibson] was based upon his personal jealousy and did not arise from any known employment issues with either [Crump or Gibson] or Defendant American HomePatient." (Crump Compl. ¶ 7; Gibson Compl. ¶ 7.) Admiral ultimately denied coverage to AHP on December 13, 2006. (Pl.'s M. Summ. J. Ex. C.)

The Circuit Court and the Virginia Workers' Compensation Commission (the "Commission") both determined that based on worker's compensation law, the deaths of Crump and Gibson did not arise out of their employment relationship. In the Circuit Court, AHP initially demurred to both wrongful death actions, arguing they were barred by the workers' compensation exclusivity provision in Va. Code Ann. § 65.2-307 because the deaths arose out of and in the course of Crump and Gibson's employment. The Circuit Court overruled the demurrer. Crump v. Morris, Nos. CL06-00547 & CL06-00549, 2007 WL 6002110, at *3 (Va. Cir. Ct. Mar. 12, 2007).[3] AHP then sought a ruling from the Commission that it had exclusive jurisdiction over the wrongful death actions. On July 18, 2007, the Commission determined that for worker's compensation purposes the deaths of Crump and Gibson did not arise out of their employment relationship with AHP. In Circuit Court, AHP later filed a Plea in Bar, again asserting that workers' compensation barred the wrongful death actions. The Circuit Court conducted an evidentiary hearing and overruled AHP's Plea in Bar on July 31, 2007. On August

---

[3]In that same opinion, the Circuit Court also dismissed the negligent supervision claims because they did not state an independent cause of action under Virginia law. Crump v. Morris, 2007 WL 6002110, at *3.

4

2, 2007, Ace agreed to defend AHP under a Reservation of Rights. (Pl.'s M. Summ. J. Ex. D.)

Before the Crump suit proceeded to trial in Circuit Court, AHP and the Crump and Gibson estates unsuccessfully attempted to mediate their disputes. Admiral, Ace, and Illinois Union participated. When a jury returned a $3.1 million verdict against AHP in the Crump suit, all parties again attempted mediation before the Gibson suit proceeded to trial. The parties ultimately reached a global settlement of $3.6 million: Admiral paid $1 million, Ace paid $1 million, and Illinois Union paid $1.6 million. In the settlement agreement, the three insurers "reserve[d] any and all rights and claims they may have against the other[s] that arise from or relate to the . . . [wrongful death suits], including, without limitation, claims for contribution, indemnification, reimbursement, or recoupment of any and all funds paid to defend and to settle the [wrongful death suits]." (Pl.'s M. Summ. J. Ex. J at 28.)

Admiral brought suit in this court for indemnification and contribution against Ace and Illinois Union for the $1 million it contributed to the settlement as well as the attorney's fees it incurred in mediating and settling the wrongful death actions. Ace, claiming that Admiral owed AHP a duty to defend, asserted a contribution counterclaim against Admiral for the $1 million it contributed to the settlement, and also sought its defense and settlement costs. All parties then moved for summary judgment.

## II.

Admiral argues that summary judgment[4] is appropriate because the deaths of Crump and

---

[4] Summary judgment is granted only "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the facts in the light most favorable to the non-moving party. See Lee v. York County Sch. Div., 484 F.3d 687, 693 (4th Cir. 2007).

5

Case 5:08-cv-00055-SGW-JGW    Document 49    Filed 03/24/09    Page 5 of 16    Pageid#: 986

Gibson arose out of and in the course of their employment with AHP and are therefore covered under Ace's "Workers Compensation and Employer Liability Policy" and excluded from coverage under Admiral's "Commercial General Liability Policy." Ace and Illinois Union essentially maintain that in construing the applicable policies, the court must give the phrase "arising out of" the same "well-defined" meaning it has under workers' compensation law. They argue that because Hoover's motivation for killing Crump and Gibson was personal and not related to his employment, this Court is constrained to conclude, as the Commission and Circuit Court concluded, that Crump's and Gibson's deaths did not arise out of their employment. The court concludes, however, that the meaning of the phrase "arising out of" for workers' compensation purposes is irrelevant to the construction of an insurance contract, unless the contract provides otherwise, and concludes that the complaints alleged bodily injuries that arose out of and in the course of the Crump and Gibson's employment: both employees were killed on AHP's premises, during working hours, by a co-employee, and both wrongful death suits sought to hold AHP liable for its failings as an employer. In short, Ace, which issued a policy that provides coverage for injuries to employees and not to third parties, now attempts to shift its liability for coverage for two employees' injuries to Admiral, which issued a policy that provides coverage for injuries to third parties and not to employees. The language of the policies in question do not support this counter-intuitive result. To the contrary, the court concludes that Admiral did not afford coverage and therefore had no duty to defend or indemnify AHP in the wrongful death litigation. Because Ace afforded primary coverage and Illinois Union afforded

---

To withstand a summary judgment motion, the non-moving party must offer evidence from which a fair-minded jury could return a verdict for the party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

excess coverage, the court concludes that Admiral is entitled to indemnification in the amount of $1 million from Illinois Union.

### A.

In arguing that its commercial general liability policy did not afford coverage for the wrongful death suits, Admiral maintains that this court must give the "arising out of" language in its employer's liability exclusion its plain and ordinary meaning, without any reference to workers' compensation law. Ace and Illinois Union argue the opposite. They contend that the court should give the "arising out of" language in Admiral's employer's liability exclusion the same meaning it has in workers' compensation law, and because the Circuit Court and Commission have already determined that the deaths of Crump and Gibson did not arise out of their employment *for workers' compensation purposes*, Admiral's employer's liability exclusion does not exclude coverage. Because this argument contradicts the plain, ordinary, and unambiguous meaning of Admiral's employer's liability exclusion and is unsupported by controlling precedent, as well as precedent from the majority of jurisdictions that have addressed this issue, the court rejects it.

The parties agree that because Admiral's policy was delivered to AHP's Tennessee headquarters, Tennessee law governs the interpretation of its policy language.[5] Under Tennessee

---

[5]As the Fourth Circuit noted in Seabulk Offshore, Ltd. v. American Home Assurance Co., 377 F.3d 408 (4th Cir. 2004):

> A federal court resolving a diversity action is, absent a controlling constitutional provision or act of Congress, obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules. . . . [P]ursuant to Virginia jurisprudence, an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts. Questions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the

7

law, "the paramount rule of construction in insurance law is to ascertain the intent of the parties." Allstate Ins. Co. v. Barnes, 896 S.W.2d 565, 568 (Tenn. 1995) (internal quotations omitted). Tennessee courts must give policy language its "common and ordinary meaning." Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993). "Disputed contractual language must be examined in the context of the entire agreement." Cobb v. Stewart Title Guar. Co., No. E2006-02571-COA-R3-CV, 2007 WL 4460198, at *2 (Tenn. Ct. App. Dec. 20, 2007). Although ambiguous language should be resolved in favor of coverage, a court "cannot under the guise of construction make a new and different contract for the parties." Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005) (quoting Memphis Furniture Mfg. Co. v. Am. Cas. Co., 480 S.W.2d 531, 533 (Tenn. 1972)). The court "need not abandon common sense; indeed, we are required to exercise common sense in construing these policies." Palmer v. State Farm Mut. Auto. Ins. Co., 614 S.W.2d 788, 789 (Tenn. 1981).

With these precepts in mind, the court concludes that the "arising out of" language in Admiral's employer's liability exclusion is plain and unambiguous and that workers' compensation law is irrelevant to its meaning. Admiral's policy excluded coverage for "'[b]odily injury' to . . . [a]n 'employee' of the insured arising out of and in the course of . . . employment by the insured." The exclusion has an unambiguously broad scope. See Allstate Ins. Co. v.

---

> state where the contract was made. Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured.

Id. at 418-19 (citations omitted). Accordingly, Tennessee law governs the interpretation of Admiral's insurance policy because Admiral delivered its policy to AHP's central office in Brentwood, Tennessee. (Irving Decl. ¶ 4.)

8

Watts, 811 S.W.2d 883, 887 (Tenn. 1991) (noting that "'arising out of' is an extremely broad phrase," and interpreting it in the context of an insurance policy exclusion without any reference to workers' compensation law). Because the exclusion makes no reference to workers' compensation law, giving "arising out of" a particular meaning based on workers' compensation law would ignore its ordinary meaning. See id. Furthermore, Admiral's policy's employer's liability exclusion would then exclude the same risks as its workers' compensation exclusion.

In rejecting Ace's and Illinois Union's argument that the "arising out of" language in Admiral's employer's liability exclusion should have the same meaning "arising out of" has in workers' compensation law, the court notes that the single, unpublished Tennessee Court of Appeals decision that Ace and Illinois Union rely on does not support their position. Although the Tennessee Court of Appeals did reference workers' compensation precedent to decide whether sexual harassment constituted "'Personal injury' caused by an offense arising out of [its] business," American Indemnity Co. v. Foy Trailer Rentals, Inc., No. W-2000-00397-COA-R3-CV, 2000 WL 1839131, at *4-5 (Tenn. Ct. App. Nov. 28, 2000), the concurrence in that case cautioned that the precedent the majority referenced "[o]bviously . . . [was] distinguishable from the [case before the court] because it involve[d] interpretation of Tennessee's worker's compensation statutes, rather than interpretation of a private contract, namely, an insurance policy." Id. at *7 (Lillard, J., concurring). The concurrence demonstrates that the willingness of Tennessee courts to superimpose worker's compensation law onto insurance policy interpretation is doubtful.

Moreover, Tennessee Supreme Court precedent and later Court of Appeals precedent undermine such an approach. The Tennessee Supreme Court, in Blue Diamond Coal Co. v.

9

Holland-America Insurance Co., refused to apply the workers' compensation definition of "employer" to interpret an insurance policy's definition of "employer." 671 S.W.2d 829, 832 (Tenn. 1984). The Tennessee Court of Appeals recently followed this approach in concluding that "the definition of 'employee' provided in the Workers' Compensation Law does not control" the definition of "employer" in an insurance policy. Tenn. Farmers Mut. Ins. Co. v. Cherry, No. W2007-00342COAR3CV, 2008 WL 933479, at *6 (Tenn. Ct. App. Apr. 7, 2008). Instead, the court noted it "must apply the plain, ordinary meaning of the term 'employee' when interpreting the policy language." Id.

The weight of authority from other jurisdictions further undermines Ace and Illinois Union's argument. The majority of jurisdictions that have considered the interplay between the "arising out of" language in an employer's liability exclusion and the workers' compensation exclusion in a commercial general liability policy have held that to interpret the scope of the two exclusions as identical would render policy language redundant. See Truck Ins. Exch. v. Gagnon, 33 P.3d 901, 904-05 (N.M. Ct. App. 2001) ("[T]he weight of authority is that, read together, the two [exclusions] express a blanket exclusion for all injuries to employees arising out of and in the course of employment whether or not they are covered by workers' compensation."); see also Nat'l Union Fire Ins. Co. v. Kasler Corp., 906 F.2d 196, 199 (5th Cir. 1990) (concluding under Texas law that limiting the scope of the employer's liability exclusion to workers' compensation claims would make the exclusion meaningless); Forum Ins. Co. v. Allied Sec., Inc., 866 F.2d 80, 84 (3d Cir. 1989) (concluding under Pennsylvania law that the employer's liability exclusion "would have no meaning if it is also limited to injuries that fall within the [workers' compensation statute]"); Meadowbrook, Inc. v. Tower Ins. Co., Inc., 559

10

N.W.2d 411, 420 n.21 (Minn. 1997) (rejecting the argument that the employer's liability exclusion applies only to claims covered by workers' compensation because the policy also contains a workers' compensation exclusion); Am. Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1013 (N.J. 1998) ("Were the employee exclusion interpreted only to bar coverage for workers' compensation claims, the workers' compensation exclusion in [the] CGL policy would be redundant."); Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co., 477 S.E.2d 59, 70-71 (N.C. Ct. App. 1996) ("A reading of [both exclusions] reveals an exclusion of liability for bodily injuries covered under workers' compensation law . . . and a similar exclusion for all other bodily injuries arising out of and in the course of employment"); McLeod v. Tecorp Int'l, Ltd., 865 P.2d 1283, 1286-88 & n.6 (Or. 1993) (interpreting the two exclusions to have an identical scope "gives no effect to [the employer's liability] exclusion and effectively reads it out of the policy"); Smith v. Animal Urgent Care, Inc., 542 S.E.2d 827, 834-35 (W. Va. 2000) (declining to apply workers' compensation precedent to decide the scope of the employer's liability exclusion). But see Fed. Rice Drug Co. v. Queen Ins. Co. of Am., 463 F.2d 626, 630 (3d Cir. 1972) (holding that both exclusions have an identical scope, but the employer's liability exclusion is meant to apply to those employees electing against workers' compensation coverage); SCI Liquidating Corp. v. Hartford Ins. Co., 526 S.E.2d 555, 557 n.2 (Ga. 2000) (same); Royal Globe Ins. Co. v. Poirier, 415 A.2d 882, 885-86 (N.H. 1980) (same).

Federal courts sitting in diversity must apply governing state law, and when necessary, predict how the state's highest court would decide an unsettled issue. Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008). Tennessee courts have not decided how, in the context of a commercial general liability policy, the meaning of the "arising out of"

11

language in the employer's liability exclusion compares with the workers' compensation exclusion. Given the weight of the authority from other jurisdictions, the court predicts that the Tennessee Supreme Court would give the "arising out of" language in the employer's liability exclusion its plain and ordinary meaning, without referencing workers' compensation law.[6]

**B.**

Given that the Tennessee Supreme Court would give the "arising out of language" in Admiral's employer's liability exclusion its plain and ordinary meaning, Ace and Illinois Union nonetheless maintain that Admiral owed AHP a duty to defend against the wrongful death actions because each complaint alleged that Hoover's "conduct towards [Crump and Gibson] was

---

[6]This result would not change if the court applied Virginia law. The Supreme Court of Virginia has twice held that workers' compensation law "will not be applied to an insurance policy unless the policy provides by reference to the specific statute that the statutory definition is intended to be applied." Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 475 S.E.2d 264, 270-71 (Va. 1996); see also Am. Reliance Ins. Co. v. Mitchell, 385 S.E.2d 583, 586 (Va. 1989) ("We decline the invitation to embark on a workers' compensation analysis to construe the term 'farm employee' as it is used in the exclusion.").

Notwithstanding this clear precedent, Ace and Illinois Union essentially repeat the argument they made with respect to Tennessee law, namely that recent precedent demonstrates that Virginia courts use workers' compensation law to determine the meaning of the "arising out of" language of an employer's liability exclusion. Although the Supreme Court of Virginia, in Asplundh v. Tree Expert Co. v. Pac. Employers Ins. Co., did rely on workers' compensation precedent to determine that an employee's accident "arose out of and in the course of his employment," the court did not explicitly identify whether it was interpreting the policy's employer's liability exclusion or the workers' compensation exclusion. 611 S.E.2d 531, 537 (Va. 2005). More importantly, nowhere in Asplundh did the Supreme Court of Virginia purport to overrule its two previous decisions holding that absent an express reference to workers' compensation law, Virginia courts will not use workers' compensation law to interpret insurance policy language. Cf. Builders Mgmt. Ins. Co. v. R.G. Mgmt. Servs., Inc., No. 1:08cv383, 2008 WL 4546600, at *4 (E.D. Va. Oct. 7, 2008) ("The Supreme Court of Virginia has ruled that insurance contracts should not be interpreted by referencing [the] Workers' Compensation statute."); State Farm Fire & Cas. Co. v. One Stop Cellular, Inc., No. 4:05-cv-00067, 2006 WL 2583408, at *4 (W.D. Va. Sept. 6, 2006) (same).

12

based upon his personal jealousy and did not arise from any known employment issues with either [Crump or Gibson] or Defendant American HomePatient." (Crump Compl. ¶ 7; Gibson Compl. ¶ 7.) Admiral counters that it was clear from the face of each complaint that the deaths of Crump and Gibson arose out of and in the course of their employment with AHP, and therefore Admiral's employer's liability exclusion applies. The court agrees with Admiral, and accordingly holds that Admiral owed AHP no duty to defend or indemnify.

Under Tennessee law, "whether a duty to defend arises depends solely on the allegations contained in the underlying complaint." Travelers Indem. Co. of Am. v. Moore & Assocs., 216 S.W.3d 302, 305 (Tenn. 2007). "The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact." Id. To determine whether an insurer owes its insured a duty to defend, the court "must review the allegations of the complaint and determine whether any of them are covered under the policy." Drexel Chem. Co. v. Bituminous Ins. Co., 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). An insurer owes its insured a duty to defend unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's language." Id. (internal quotations omitted). In construing the scope of the "arising out of" language in an insurance policy exclusion, the Tennessee Supreme Court has rejected applying a "but-for" theory of causation; that court has instead held that coverage exists so long as the damage or injury resulted in "substantial part" from a non-excluded cause. Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 887-88 (Tenn. 1991).

With these precepts in mind, the court concludes that Admiral owed AHP no duty to defend, and therefore no duty to indemnify, because it was plain from the face of the Crump and

13

Gibson complaints that their deaths arose out of and in the course of their employment with AHP. Both wrongful death actions asserted that AHP, as Crump and Gibson's *employer*, failed to provide a safe workplace and failed to exercise reasonable care in retaining a subordinate. Each complaint alleged that Hoover, a co-employee, shot and killed Crump and Gibson during working hours at AHP's workplace, even after Crump and other AHP employees placed AHP's manager on notice about Hoover's prior threatening behavior. Each complaint sought to hold AHP liable *as an employer* because its negligence proximately caused Crump and Gibson's deaths. It is therefore clear that the complaints alleged that Crump and Gibson's deaths resulted from their employment relationships with AHP and therefore arose out of and in the course of their employment for the purposes of Tennessee law. The lone allegation that Hoover's conduct "did not arise from any known employment issues with either [Crump or Gibson] or Defendant American HomePatient," does not change this result. Contextually, this allegation simply characterizes Hoover's personal motivation. Accord Crump v. Morris, 2007 WL 6002110, at *3 ("The Plaintiffs . . . have pled that Mr. Hoover's shooting of Mr. Gibson and Ms. Crump was not directed *against them as employees* or because of *their* employment" (emphasis added)). Irrespective of Hoover's personal motivation, the other circumstances alleged in the complaints by themselves support only one conclusion: Crump and Gibson's deaths arose out of their employment with AHP.

It is important to again emphasize the illogical and counter-intuitive result were the court to conclude otherwise. Admiral provided AHP with a commercial general liability policy; it is a policy "designed and intended to provide coverage to the insured for tort liability for physical injury to the person or property of others. . . . A commercial general liability policy *is not*

14

*designed to provide coverage for an employer's liability for injuries to its employees.*" 9A Lee R. Russ & Thomas F. Segalla, Couch on Insurance, § 129:10 (3d ed. 2008) (emphasis added). At a basic level, absent some idiosyncratic insurance policy language, it would defy logic to hold that a commercial general liability insurer like Admiral owed its policy-holder a duty to defend and indemnify in wrongful death lawsuits seeking to hold the policy-holder liable because it unreasonably failed to prevent a co-employee from shooting and killing another co-employee during working hours at the policy-holder's workplace. Accordingly, the court concludes that Admiral owed AHP no duty to defend or indemnify in the wrongful death actions.

C.

Admiral additionally maintains that because the deaths of Crump and Gibson arose out of and in the course of their employment, Ace was obligated to provide coverage under its "Employers Liability Insurance." Because Admiral contributed $1 million to the global settlement, but reserved its right to seek indemnity and contribution, Admiral now argues that it is entitled to indemnification from Illinois Union, Ace's excess liability insurer. The court agrees with Admiral.

Ace's "Employer's Liability Insurance" provides coverage for "bodily injury by *accident* or bodily injury by disease. Bodily injury includes resulting death." Unless excluded, an accident is covered if it "arise[s] out of and in the course of the injured employee's employment." The Tennessee Supreme Court has construed the term "accident" in an insurance policy to "include the 'negligent acts of the insured causing damage which is undesigned and unexpected.'" Travelers, 216 S.W.3d at 308 (quoting Gassaway v. Travelers Ins. Co., 439 S.W.2d 605, 607 (Tenn. 1969)). Crump and Gibson's deaths constitute "bodily injury by

15

accident" because they were "undesigned" and "unexpected" by AHP – the insured. Based on the plain, unambiguous, and ordinary meaning of "arising out of" as previously detailed, Crump and Gibson's deaths "arose out of and in the course of [their] employment," and since Ace has not pointed to an applicable exclusion, the court concludes that Ace's Employer's Liability Insurance affords coverage.

Admiral reserved all rights to pursue indemnification against Ace and Illinois Union. Accordingly, because Ace has paid its policy limit, and Illinois Union's excess coverage mirrored Ace's underlying coverage, Admiral is entitled to indemnification in the amount of $1 million from Illinois Union.[7]

### III.

For the reasons stated, the court **GRANTS** Admiral's Motion for Summary Judgment and **DENIES** Ace and Illinois Union's Motion for Summary Judgment.

Enter: This 24th day of March, 2009.

UNITED STATES DISTRICT JUDGE

---

[7] Admiral additionally claims that it is entitled to the attorney's fees it incurred in mediating and eventually reaching a global settlement because Ace and Illinois Union were unwilling to reach a global settlement unless Admiral participated. (Compl. ¶ 25.) Admiral cannot recover these fees because Admiral did not incur them in defending AHP; rather, Admiral participated in the global settlement simply to protect its own interests. As such, Admiral has no basis for recovering these costs.

Case 5:08-cv-00055-SGW-JGW   Document 49   Filed 03/24/09   Page 16 of 16   Pageid#: 997